IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2026

## STATE OF TENNESSEE v. JOSEPH LUMLEY

**Appeal from the Criminal Court for Shelby County**
**No. 21-00037       Paula L. Skahan, Judge**

_____

### No. W2025-00067-CCA-R3-CD

_____

A Shelby County jury convicted the Defendant, Joseph Lumley, of one count of aggravated sexual battery and one count of assault.  The trial court subsequently imposed an effective sentence of ten years' imprisonment.  On appeal, the Defendant raises four issues: (1) whether the evidence is legally sufficient to convict him of aggravated sexual battery; (2) whether the trial court erred in denying the Defendant's motion in limine to admit evidence related to the victim's history; (3) whether the trial court erred in allowing testimony regarding the victim's demeanor on the night of the offense; and (4) whether the cumulative effect of the errors deprived him of a fair trial.  Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and JOHN W. CAMPBELL, SR., JJ., joined.

William D. Massey (on appeal) and Blake D. Ballin (at trial), Memphis, Tennessee, for the appellant, Joseph Lumley.

Jonathan Skrmetti, Attorney General and Reporter; Courtney N. Orr, Deputy Attorney General and Park Huff, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Dru Carpenter, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.    UNDERLYING OFFENSE

In July 2020, the Defendant and his girlfriend lived together at a residence in Shelby County.  During that time, the victim stayed with them for several days.  The victim was close to the Defendant's girlfriend and considered her to be like an aunt.

On July 24, the victim, the Defendant, and his girlfriend sat in the living room for a while before the Defendant's girlfriend went to sleep.  In the early morning hours, the Defendant and the victim watched a movie together.  During the movie, the Defendant was lying on one end of the couch while the victim was lying on the other end.  At some point during the movie, the Defendant put his feet underneath the victim's buttocks because "his feet were cold."  He then began rubbing them back and forth.  He eventually moved his feet into her shorts.

The victim then saw a light out of the corner of her eye, which she believed to be the camera flashlight from the Defendant's phone, "like taking a picture."  After the victim saw the light, the Defendant inserted his toe into her vaginal area.  The Defendant also put the victim's foot on top of his groin over his clothes.

The victim, who had just turned twelve years old, pretended to be asleep during the incident.  Believing the victim to be asleep, the Defendant "woke [her] up" to put a pillow under her head.  The victim then asked to sleep in the bedroom where she had been staying and called her mom.  Her mom picked her up from the residence, and the victim left without taking her bag or saying anything to the Defendant or his girlfriend.  Once at home, the victim told her mother what had happened, and law enforcement was then contacted.

After law enforcement reported to the victim's apartment and the victim gave her statement, Officer Alexander Vega transported her to the Rape Crisis Center.  There, she received a sexual assault examination.  DNA swabs from the shorts indicated the presence of "at least" two males, but the profile obtained was limited and thus inconclusive for comparison purposes.  The victim also went to the Child Advocacy Center a few weeks later for a forensic interview.

## B.    TRIAL, SENTENCING, AND APPEAL

On July 25, 2020, a Shelby County grand jury charged the Defendant with one count of rape of a child for penetrating the victim with his toe.  The grand jury also charged him with one count of aggravated sexual battery for rubbing the outside of her clothing and placing her foot on his groin.  The case proceeded to trial in July 2024.

Before the trial, the Defendant filed a motion in limine, seeking to introduce evidence that the victim was a "troubled teen who had a history of 'acting out.'"  The trial court denied the motion and excluded the evidence, holding that any probative value was outweighed by the danger of unfair prejudice.

During the trial, the State called witnesses who testified to the facts described above.  These witnesses included the victim, law enforcement officers, the forensic nurse, the forensic interviewer, and the forensic scientist who reviewed the rape kit evidence.  Officer Alexander Vega, the responding officer, testified that the victim appeared to be in a state of shock.  He explained that her demeanor was "very stand-still, very straight line mono" and that it was obvious that she had "just experienced something very traumatic."  The Defendant objected to this testimony as being speculative, but the trial court overruled the objection.

Forensic Nurse Diary Prater, who worked at the Rape Crisis Center, also testified regarding the victim's sexual assault examination.  She noted that it was uncommon for victims in similar situations to have visible injuries.  She was, therefore, not surprised that the victim showed no signs of injury.

Special Agent Carrie Schmittgen with the Tennessee Bureau of Investigation tested the rape kit evidence.  She confirmed that the DNA results were not inconsistent with the victim's testimony.  However, the DNA profile obtained was limited and, therefore, inconclusive for comparison.

After the State concluded its case-in-chief, the Defendant moved for a judgment of acquittal, which the court denied.  The Defendant did not present any further proof.

The jury ultimately found the Defendant guilty of one count of aggravated sexual battery, a lesser-included offense of rape of a child.  The jury also found him guilty of one count of assault, a lesser-included offense of aggravated sexual battery.  The trial court

imposed an effective sentence of ten years' imprisonment, with both counts running concurrently.

The Defendant filed a timely motion for a new trial. The trial court denied his motion by written order on December 16, 2024, and the Defendant filed a timely notice of appeal thirty days later. *See* Tenn. R. App. P. 4(a).

## ANALYSIS

In this appeal, the Defendant raises four issues. He first challenges the legal sufficiency of his conviction for aggravated sexual battery. He next argues that the trial court erred in denying his motion in limine to admit evidence of the victim's history. Third, he asserts that the trial court erred in allowing lay opinion testimony about the victim's demeanor on the night of the offense. Finally, he contends that the cumulative effect of any errors denied him a fair trial.

We address each of these issues in turn.

### A.   LEGAL SUFFICIENCY OF THE EVIDENCE

The Defendant first argues that the evidence is legally insufficient to sustain his conviction for aggravated sexual battery. Specifically, he contends that no rational juror could have credited the victim's testimony, which was contradicted by the victim's prior statements and the absence of physical evidence. The State responds that the evidence is legally sufficient to support the Defendant's conviction for aggravated sexual battery. We agree with the State.

### 1.   Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, when making that determination, the State "is entitled to the strongest

legitimate view of the evidence and any reasonable inferences that may be drawn from it." *State v. Rimmel*, 710 S.W.3d 640, 645 (Tenn. 2025) (citation and internal quotation marks omitted).

To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact." *State v. Curry*, 705 S.W.3d 176, 183 (Tenn. 2025) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citation and internal quotation marks omitted).

### 2. Aggravated Sexual Battery

The first step in evaluating the sufficiency of the evidence is to identify the elements of the offense. *See Rimmel*, 710 S.W.3d at 646. In this case, Count 1 of the indictment charged the Defendant with the offense of rape of a child. The jury convicted him instead of the lesser-included offense of aggravated sexual battery. To sustain a conviction for a lesser-included offense, the proof must be sufficient to support each and every element of the conviction offense. *State v. Parker*, 350 S.W.3d 883, 909 (Tenn. 2011); *State v. Garrens*, No. W2024-00258-CCA-R3-CD, 2025 WL 1307696, at *3 (Tenn. Crim. App. May 6, 2025) (same), *no perm. app. filed*.

Aggravated sexual battery requires "unlawful sexual contact with a victim by the defendant" when the victim is less than thirteen years old. Tenn. Code Ann. § 39-13-504(a)(4) (2018). Sexual contact is defined as "the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]" *Id.* § 39-13-501(6) (2018). The legislature defined the term "intimate parts" as including, among other things, "the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" *Id.* § 39-13-501(2).

Applying these principles, the record contains ample evidence from which a rational trier of fact could find that the Defendant committed aggravated sexual battery. The victim had just turned twelve years old at the time of the offense. She testified that the Defendant put his feet underneath her buttocks and began rubbing them back and forth. He then placed his foot inside her shorts and inserted his toe into her vaginal area, and the victim

believed that he took a photograph during this interaction. *See, e.g.*, *State v. Thompkins*, No. E2023-00209-CCA-R3-CD, 2023 WL 8112826, at *3 (Tenn. Crim. App. Nov. 21, 2023) (sustaining an aggravated sexual battery conviction where the victim testified that the defendant touched her "privates" over her clothes), *no perm. app. filed*; *State v. Vandenburg*, No. M2017-01882-CCA-R3-CD, 2019 WL 3720892, at *60 (Tenn. Crim. App. Aug. 8, 2019) (affirming conviction for aggravated sexual battery, in part, when the defendant took pictures of the victim's intimate parts during the encounter), *perm. app. denied* (Tenn. Jan. 15, 2020); *State v. Hobson*, No. M2002-01462-CCA-R3-CD, 2003 WL 22970968, at *8 (Tenn. Crim. App. Dec. 18, 2003) (affirming conviction for aggravated sexual battery when the "defendant penetrated her labia with his toe twice and that he inserted his fingers into her vagina once"), *no perm. app. filed*. Accordingly, we conclude that the evidence is legally sufficient to support the Defendant's conviction for aggravated sexual battery.

The Defendant does not contest the sufficiency of the proof establishing any specific element of his conviction. Instead, the Defendant asserts generally that the victim's trial testimony was unreliable as it contradicted her previous statements made at the time of the offense. He further contends that there was no physical proof that he committed the offense. We respectfully disagree.

In the context of aggravated sexual battery convictions, we have observed that "it is well-settled law in Tennessee that the testimony of a victim, by itself, is sufficient to support a conviction." *Thompkins*, 2023 WL 8112826, at *3 (citation and internal quotation marks omitted). Indeed, a minor victim's testimony requires no corroboration to sustain a conviction. *State v. Collier*, 411 S.W.3d 886, 899 (Tenn. 2013) ("[I]t has long been the rule in our state that the uncorroborated testimony of a minor victim may be sufficient to sustain a conviction for forcible or coercive sex offenses such as simple rape."). Thus, the victim's testimony alone is sufficient evidence to support the Defendant's conviction for aggravated sexual battery. *See, e.g.*, *State v. Ware*, No. W2016-02082-CCA-R3-CD, 2018 WL 801624, at *2 (Tenn. Crim. App. Feb. 8, 2018) ("Defendant does not challenge the proof to support any specific element of the offense, but rather he argues that the evidence is insufficient to sustain his conviction because the State did not provide independent evidence to corroborate the victim's testimony. However, the law does not require that a minor victim's testimony be corroborated to support a conviction."), *no perm. app. filed*.

In essence, the Defendant's argument is an invitation to reweigh the evidence or to disturb the jury's determinations on appeal. We respectfully decline to do so, particularly in light of the standard of appellate review. When we review the legal sufficiency of the

convicting evidence, the law requires us to consider all evidence and to accredit the testimony of the State's witnesses. *Curry*, 705 S.W.3d at 183. This standard is intentionally deferential, as it seeks to "impinge[ ] upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson*, 443 U.S. at 319.

Thus, we take the victim's testimony as true to give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. As such, it is not part of our role, properly conceived, to "reevaluate the credibility of the witnesses or to revisit inconsistencies in the testimony." *State v. Murray*, No. M2021-00688-CCA-R3-CD, 2022 WL 17336522, at *5 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Mar. 8, 2023). Whatever inconsistencies that may exist do not render her testimony incredible as a matter of law. *State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003) ("A jury's verdict will not be overturned unless there are inaccuracies or inconsistencies that are so improbable or unsatisfactory as to create a reasonable doubt of the [defendant's] guilt." (citation and internal quotation marks omitted)).

Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could find the essential elements of aggravated sexual battery beyond a reasonable doubt. The Defendant is not entitled to relief on this ground.

## B. DENIAL OF MOTION IN LIMINE TO ADMIT EVIDENCE RELATED TO THE VICTIM

The Defendant next argues that the trial court erred in denying his motion in limine to admit multiple instances of the victim's prior conduct. He sought to establish that the victim was a "troubled teen with a history of self-harm, possible drug use, and attention seeking behavior." He further maintains that the trial court's ruling deprived him of his Sixth Amendment right to present a defense. The State responds that the Defendant is not entitled to relief under Rules 404(a)(2) and 405 of the Tennessee Rules of Evidence. It also argues that the trial court's ruling did not violate the Defendant's Sixth Amendment rights.

As we explain below, the Defendant's claim appears to implicate four discrete grounds: Tennessee Rules of Evidence 404(a)(2), 404(b), and 405(b), as well as his Sixth Amendment right to present a defense. We agree with the State that the Defendant is not entitled to relief on these grounds.

### 1. Background

As background for these issues, the Defendant filed a pretrial motion in limine under Tennessee Rules of Evidence 404(a)(2) and 405(a). He sought to admit evidence that the victim was a "troubled teen who had a history of 'acting out.'" The motion included evidence of the victim's history of self-harm, including a handwritten note by the victim "demonstrat[ing] emotional instability and threaten[ing] self harm." It also referenced an incident in which an Amber Alert was issued for the victim after she ran away from home, which occurred approximately two years after the incident with the Defendant. Finally, the motion cited empty Swisher Sweets cigar wrappers found in the victim's possession, which the Defendant characterized as drug paraphernalia.

At the motion hearing, however, the Defendant described his motion as "a 404(b) type motion." He also stated that he was "not seeking to put on character evidence." The Defendant asserted that the evidence set forth in the motion in limine was probative of the victim's motive to fabricate allegations against him.

The trial court excluded the evidence. It held that any probative value was outweighed by the danger of unfair prejudice from "making her out to be a drug addict, an attention seeker." The court further concluded that, while the victim had mental health issues, the proffered evidence was not "probative to a motive to make up allegations" against the Defendant.

In his motion for a new trial, the Defendant did not invoke any particular rules of evidence. Instead, he claimed more generally that the trial court erred in denying his motion in limine. He described his motion as "seeking to introduce proof that the alleged victim in this matter was a troubled teen with a history of acting out." At the hearing on the motion for a new trial, the Defendant asserted that the evidence showed a pattern of attention-seeking.

### 2. Nature of the Defendant's Arguments

Before addressing the merits of this issue, we first identify the claims that are properly before us. Tennessee Rule of Appellate Procedure 27(a)(4) requires an appellant to include "[a] statement of the issues presented for review" in the appellate brief. This requirement helps ensure that the appellate court knows "immediately what questions they are supposed to answer" and need not "search[] for hidden questions." *Hodge v. Craig*,

382 S.W.3d 325, 334 (Tenn. 2012) (citations omitted). A broad or undifferentiated issue statement may risk waiver when it leaves the court unable to discern the specific grounds for relief. *See Trezevant v. Trezevant*, 696 S.W.3d 527, 531 (Tenn. 2024). Nevertheless, an appellant's argument may refine a broad issue statement when the "issues and argument taken together clearly present the grounds for appellate relief." *Id.*

Here, the Defendant's brief identifies this issue as whether the trial court erred by denying his "Motion In Limine Regarding Instances of [the Victim]'s Prior Conduct." In the argument section of his brief, he quotes Rules 404(a)(2) and 405(a), cites Rule 404 generally, refers to the victim's alleged motive to lie about him, and invokes his constitutional right to present a defense. Because these theories do not align neatly with the theory pursued at the motion hearing, we address each discernible ground separately. In doing so, we apply ordinary preservation and briefing principles to each claim.

### a. Standard of Appellate Review

We generally review questions involving the admission or exclusion of evidence for an abuse of discretion. *State v. McCaleb*, 582 S.W.3d 179, 185-86 (Tenn. 2019) (citations omitted). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *State v. Reynolds*, 635 S.W.3d 893, 921 (Tenn. 2021) (citation and internal quotation marks omitted). Rule 404(b) evidence is also reviewed for an abuse of discretion. However, if the trial court did not substantially comply with Rule 404(b)'s procedures, the trial court's ruling is reviewed de novo. *State v. Clark*, 452 S.W.3d 268, 287 (Tenn. 2014).

### b. Tennessee Rules of Evidence 404(a)(2) and 405

We first address what we understand to be the Defendant's claims under Tennessee Rules of Evidence 404(a)(2) and 405. Rule 404(a)(2) permits a defendant in a criminal case to offer evidence concerning "a pertinent trait of character of the alleged victim of the crime[.]" Tenn. R. Evid. 404(a)(2). When this type of evidence is admissible, Rule 405 governs the method of proving the character trait. *See State v. Hicks*, No. M2024-00505-CCA-R3-CD, 2025 WL 3152284, at *15 (Tenn. Crim. App. Nov. 12, 2025) (citations omitted), *no perm. app. filed*. Rule 405(a) permits inquiry on cross-examination into relevant specific instances of conduct only if the court first holds a hearing outside the jury's presence, determines that a reasonable factual basis exists for the inquiry, and

determines that the probative value of the specific instance of conduct on the character witness's credibility outweighs its prejudicial effect on substantive issues. Tenn. R. Evid. 405(a).

The Defendant's written motion in limine invoked Rules 404(a)(2) and 405 as the basis for relief. In that motion, he asserted that the victim's alleged prior conduct was character evidence that "goes to the victim's credibility as a witness[.]" At the hearing, however, the Defendant expressly changed course. He stated that his motion was "a 404(b) type motion," and he twice disclaimed any effort to introduce character evidence. Instead, he sought to admit the evidence to show the victim's alleged "motive" to fabricate the allegations.

Later in the same hearing, the trial court again confirmed the Defendant's theory. It asked whether he was seeking to admit the evidence under Rule 404(b), and the Defendant responded affirmatively. The court then asked whether the Defendant was seeking to introduce character evidence—the same question he had twice answered in the negative at the outset of the hearing—and the Defendant confirmed again that he was not attempting to do so. The State responded to the Defendant's Rule 404(b) argument, and the trial court analyzed the issue as one involving motive and unfair prejudice rather than as one involving a pertinent character trait of the victim.

This procedural history is dispositive. To preserve an issue for plenary appellate review, a party must first present the issue to the trial court with sufficient specificity. *See* Tenn. R. Evid. 103(a). The party must then raise the same issue in a timely motion for a new trial. *See* Tenn. R. App. P. 3(e); *State v. Ruiz*, 716 S.W.3d 439, 453 (Tenn. Crim. App. 2024). A motion in limine preserves an evidentiary issue for appeal only when it "clearly presents an evidentiary question and [when] the trial judge has clearly and definitively ruled." *State v. McGhee*, 746 S.W.2d 460, 462 (Tenn. 1988); *see also* Tenn. R. Evid. 103(a)(2). When an issue is only tentatively suggested or the record is incompletely developed, the failure to raise the issue clearly in the trial court carries a substantial risk of waiver. *See State v. Walls*, 537 S.W.3d 892, 900 (Tenn. 2017).

Rules 404(a)(2) and 405(a) apply when a party seeks to introduce character evidence concerning a pertinent trait of the victim. Although the Defendant's written motion invoked those rules, he expressly disclaimed that theory at the motion hearing. Instead, he confirmed that he was proceeding under Rule 404(b) and sought to admit the evidence to show the victim's alleged motive to fabricate. As a result, the trial court had no occasion to decide whether the evidence was admissible as victim-character evidence under Rules

404(a)(2) and 405(a).  The Defendant may not disclaim that theory in the trial court and then seek to reassert it here.  *See* Tenn. R. Evid. 103(a); *McGhee*, 746 S.W.2d at 462; *Walls*, 537 S.W.3d at 900.

Nor would plain error review provide relief from this kind of affirmative waiver.  The plain error doctrine is a narrow corrective doctrine, not a means for a party to undo deliberate trial choices.  *State v. Pewitte*, __ S.W.3d __, 2025 WL 3510902, at *6 (Tenn. Crim. App. Dec. 8, 2025).  As we have recognized, "relief under the plain error doctrine is unavailable when a defendant's failure to object results from a trial choice that fits within counsel's broader defense strategy."  *Id.* (citing *State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000)).  Because the Defendant affirmatively chose to abandon relief under Rules 404(a)(2) and 405(a) and litigate the motion under other grounds, any claim for plain error relief would necessarily fail.  In any event, because he has not requested plain error review or attempted to satisfy its requirements, we respectfully decline to consider any issue further sua sponte.  *See, e.g.*, *State v. Gardner*, 716 S.W.3d 388, 417 (Tenn. Crim. App. 2024).  Accordingly, we conclude that the Defendant is not entitled to relief under Rules 404(a)(2) or 405(a).[1]

### c.      Tennessee Rule of Evidence 404(b)

We next address the Defendant's possible claim under Tennessee Rule of Evidence 404(b).  Rule 404(b) generally prohibits evidence of other crimes, wrongs, or acts when offered to prove action in conformity with a character trait, but it permits such evidence for other relevant purposes if the rule's procedural and substantive requirements are satisfied.  *See* Tenn. R. Evid. 404(b); *State v. Rimmer*, 623 S.W.3d 235, 261 (Tenn. 2021).  At the motion hearing, the Defendant repeatedly identified Rule 404(b) as the basis for admitting the victim's prior conduct to show motive.

However, presenting an issue to the trial court does not, by itself, preserve it for appellate review.  Tennessee Rule of Appellate Procedure 27(a)(7)(A) requires an appellant's brief to set forth the contentions "with respect to the issues presented, and the reasons therefor," including citations to authorities and appropriate references to the record.  Likewise, Rule 10(b) of this court provides that "[i]ssues which are not supported by

---

[1]      The State also argues that the 1991 Advisory Comments to Rule 404(a)(2) route victim character evidence of this kind to Rule 412 rather than Rule 404(a)(2), and that Rule 412 is inapplicable because the evidence does not concern the victim's sexual behavior.  Because we resolve this issue on waiver grounds, we do not reach the merits of that argument.

argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). "Simply raising an issue is not sufficient to preserve it for appellate review." *State v. Cunningham*, No. M2023-00909-CCA-R3-CD, 2024 WL 3634259, at *2 (Tenn. Crim. App. Aug. 2, 2024) (citation omitted), *no perm. app. filed*.

Assuming that Rule 404(b) applies in this situation, *see State v. Moon*, 644 S.W.3d 72, 82 n.10 (Tenn. 2022), we observe that the Defendant mentions only that the excluded proof established the victim's motive to lie about him. Apart from that passing reference to a non-propensity purpose, the brief does not cite Rule 404(b). It does not discuss Rule 404(b)'s procedural requirements, identify the applicable standard of appellate review, cite case law applying the rule, or explain how the trial court abused its discretion. The brief also does not challenge the trial court's procedure or engage the court's findings regarding probative value and unfair prejudice.

Thus, to resolve the Defendant's issue, we would have to construct the nature and extent of his arguments from his issue statement and the single reference in his brief. Next, we would have to search the appellate record for testimony, evidence, and information relevant to those arguments. We would then have to address (our own) constructed arguments in light of the applicable law and standards of appellate review.

Our role as an error-correction court does not permit us to undertake the efforts required by the Defendant's submission. *See City of Memphis v. Edwards by & Through Edwards*, No. W2022-00087-SC-R11-CV, 2023 WL 4414598, at *2 (Tenn. July 5, 2023) (Order) ("[D]ecades of caselaw and the very foundations of our adversarial justice system dictate that courts cannot and should not shoulder the burden of fashioning the arguments of the parties who have chosen not to do so for themselves." (citation omitted)). After all, the parties generally know what is best for them and are responsible for presenting the facts and arguments that entitle them to relief. *See State v. Kim*, 716 S.W.3d 78, 91 (Tenn. Crim. App. 2025); *State v. Manning*, No. E2022-01715-CCA-R3-CD, 2023 WL 7439203, at *5 (Tenn. Crim. App. Nov. 9, 2023) (citation omitted), *perm. app. denied* (Tenn. May 16, 2024).

Because the Defendant's brief has not complied with Tennessee Rule of Appellate Procedure 27(a)(7)(A) or Rule 10(b) of this court, he has waived appellate consideration of any Rule 404(b) issue. *See State v. Hamilton*, No. W2023-01127-CCA-R3-CD, 2024 WL 4130757, at *5 (Tenn. Crim. App. Sept. 10, 2024), *perm. app. denied* (Tenn. Feb. 20, 2025). And because he has neither requested a plain error review nor attempted to satisfy

the applicable factors, we respectfully decline to review the issue for plain error sua sponte. *See Gardner*, 716 S.W.3d at 417. The Defendant is not entitled to relief on this ground.

### 3. Constitutional Right to Present a Defense

The Defendant also argues that the trial court's denial of his motion in limine interfered with his constitutional right to present a defense. The State responds that the trial court did not violate that right and acted within its discretion in denying the motion. We conclude that the Defendant has waived plenary review of this issue.

To preserve an issue for plenary appellate review, a party must first raise the issue in the trial court and then raise the same issue in a timely, written motion for a new trial. *See Ruiz*, 716 S.W.3d at 453. A party may not object on one ground in the trial court and then pursue a different ground in the motion for a new trial or on appeal. *See State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020) (concluding that the defendant waived his constitutional challenge to an evidentiary ruling when he objected at trial on a non-constitutional ground but later asserted a constitutional ground).

Here, the Defendant's motion for a new trial did not raise a Sixth Amendment or due process challenge to the exclusion of the evidence. Instead, the motion generally asserted that the trial court erred in denying the motion in limine "seeking to introduce proof that the alleged victim in this matter was a troubled teen with a history of acting out." At the hearing on his motion for a new trial, the Defendant argued that the evidence showed a pattern of attention-seeking, but he did not frame the claim as a constitutional violation.

The motion for a new trial is a defendant's final opportunity to give the trial court notice of an alleged error and to seek correction before appellate review. *See* Tenn. R. Crim. P. 33(c); Tenn. R. App. P. 3(e). Because the Defendant did not raise his Sixth Amendment claim in his motion for a new trial, he has waived plenary review of that issue on appeal. *See State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010); *State v. Funk*, No. E2022-01367-CCA-R3-CD, 2023 WL 7130289, at *2 (Tenn. Crim. App. Oct. 30, 2023), *no perm. app. filed*. And because he has neither requested plain error review nor attempted to satisfy its requirements, we respectfully decline to review the issue for plain error on our own. *See Gardner*, 716 S.W.3d at 417. Accordingly, the Defendant is not entitled to relief on this issue.

- 13 -

## C.   ADMISSION OF LAY OPINION TESTIMONY

Next, the Defendant argues that the trial court erred in allowing Officer Vega to testify about the victim's demeanor on the date of the offense.  Specifically, he asserts that the trial court erred by allowing Officer Vega to testify that the victim appeared to be in shock and had "just experienced something very traumatic."  The State responds that the trial court acted within its discretion because Officer Vega's testimony was based on his personal observations and satisfied Tennessee Rule of Evidence 701.  We agree with the State.

### 1.   Background

As background for this issue, the State called Officer Vega to testify at trial about his interaction with the victim on the date of the offense.  Officer Vega testified that he responded to the victim's apartment after receiving a call about the incident.  He stated that, when he arrived, the victim appeared to be in a state of shock.

The State then asked Officer Vega why he believed that the victim was in shock.  Officer Vega responded, "She was very forthcoming with information, but her demeanor just appeared very stand-still, very straight line mono, almost.  You could tell she was definitely, from my experience, you could tell that she had just experienced something very traumatic[.]"  The Defendant objected on the ground of speculation, and the trial court overruled the objection.  Officer Vega then stated, "From my experience I believe that she was in a state of shock when I came into contact with her."

### 2.   Tennessee Rule of Evidence 602

The Defendant first relies on Tennessee Rule of Evidence 602 in asserting that Officer Vega's testimony was improperly admitted.  Rule 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Tenn. R. Evid. 602.  In general, Rule 602 requires a witness to have perceived the relevant facts through one or more of the five senses.  *See State v. Boling*, 840 S.W.2d 944, 949 (Tenn. Crim. App. 1992).

Here, Officer Vega's testimony describing the victim's demeanor was proper under Rule 602.  He personally responded to the victim's apartment, spoke with the victim, and

observed her appearance, responsiveness, tone, and affect. His testimony about what he saw and heard, therefore, rested on firsthand knowledge. To the extent the Defendant challenges Officer Vega's inference from those observations, such a challenge is better addressed under Rule 701. Accordingly, the Defendant is not entitled to relief under Rule 602.

### 3. Tennessee Rule of Evidence 701

The Defendant next argues that the trial court failed to make appropriate findings under Rule 701 before allowing Officer Vega to testify about the victim's demeanor. He contends that Officer Vega improperly offered a lay opinion about the victim's state of mind after meeting her for the first time. The State responds that the testimony was admissible because it was rationally based on Officer Vega's own perceptions and helped the jury understand his testimony and the circumstances of the report. We agree with the State.

### a. Standard of Appellate Review

Challenges to the admission of lay opinion evidence are reviewed on appeal for an abuse of discretion. *See State v. McCloud*, 310 S.W.3d 851, 865 (Tenn. Crim. App. 2009) ("When the admission or exclusion of opinion evidence is challenged on appeal, it is reviewable only for abuse of discretion."). "A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision that is against logic or reasoning that causes an injustice to the party complaining." *State v. Russell*, 382 S.W.3d 312, 317 (Tenn. 2012).

### b. Admissibility of Officer Vega's Testimony

Tennessee Rule of Evidence 701(a) provides that, "[i]f a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Tenn. R. Evid. 701(a). Generally, lay opinions must be based on the witness's own observations, should require no expertise, and should fall within the range of common experience. *See State v. Cheatham*, No. E2021-01241-CCA-R3-CD, 2023 WL 3025199, at *12 (Tenn. Crim. App. Jan. 6, 2023) (quoting *State v. Samuel*, 243 S.W.3d 592,

603 (Tenn. Crim. App. 2007)), *perm. app. denied* (Tenn. June 13, 2023). Lay opinion testimony is not inadmissible simply because it embraces an ultimate issue. *See State v. Schiefelbein*, 230 S.W.3d 88, 130 (Tenn. Crim. App. 2007) (citing Tenn. R. Evid. 704).

The types of lay opinion testimony that may be admissible under Rule 701 include opinions that a person appeared "angry, frightened, upset, aroused or shocked[.]" Neil P. Cohen et al., *Tennessee Law of Evidence* § 7.01[4][c] (7th ed. 2024) (citation omitted). Similarly, this court has recognized that trauma-related observations may, in some circumstances, fall within the realm of permissible lay opinion when the testimony rests on the witness's personal perceptions rather than specialized knowledge. *See State v. Spencer*, No. E2022-01276-CCA-R3-CD, 2024 WL 228412, at *20 (Tenn. Crim. App. Jan. 22, 2024), *perm. app. denied* (Tenn. June 20, 2024). Other courts have drawn a similar distinction between testimony based on a witness's perception of body language and testimony based on specialized training. *Cf. People v. Brown*, 926 N.W.2d 879, 887 (Mich. Ct. App. 2018), *amended*, 996 N.W.2d 492 (Mich. Ct. App. 2019). By contrast, expert testimony that a victim exhibits behavior consistent with a condition requiring clinical diagnosis may present a different concern. *See State v. Ballard*, 855 S.W.2d 557, 561 (Tenn. 1993) (holding that expert testimony that a victim "exhibit[ed] behavior consistent with post-traumatic stress syndrome, brought on by sexual abuse," improperly invaded the province of the jury to decide credibility).

Applying these principles, the trial court acted within its discretion in admitting Officer Vega's testimony that the victim appeared to be in shock. Officer Vega did not purport to diagnose the victim or to offer expert testimony about trauma. Instead, he described observable features of the victim's demeanor. He testified that she was "very forthcoming with information," but that her demeanor was "very stand-still" and "very straight line mono, almost." From those observations, he stated that he believed she was in a state of shock. His opinion was rationally based on his perception of the victim and did not require specialized knowledge. It also helped the jury understand Officer Vega's interaction with the victim, the circumstances under which the report was made, and the context for his investigative actions.

The closer question concerns Officer Vega's statement that the victim had "just experienced something very traumatic." That statement went beyond a description that the victim appeared shocked. It also suggested an inference about what had happened to her. The concern is not that the word "traumatic" invariably requires expert testimony. Rather, the concern is that—in the context of a sexual-abuse prosecution—testimony describing a

victim as having experienced trauma can approach an implicit comment on whether the charged event occurred. *See Ballard*, 855 S.W.2d at 561.

The closer question, however, does not require a different result. Officer Vega grounded the statement in his personal observations of the victim's demeanor, not in any specialized training or diagnostic framework. He did not purport to diagnose the victim's condition, did not identify the Defendant as the cause of that condition, and did not state that the victim had been sexually assaulted. Nor did he directly express an opinion that the victim was truthful. Instead, the statement served as a lay description of the victim's apparent emotional condition when Officer Vega encountered her. Under these circumstances, the trial court acted within its discretion to admit the testimony under Rule 701.

The Defendant argues that the trial court erred by failing to make specific findings under Rule 701. However, Rule 701 does not require the trial court to make express findings before admitting lay opinion testimony. The question on appeal is whether the record supports the trial court's exercise of discretion. Here, the record shows that Officer Vega personally observed the victim and explained the specific observations that formed the basis of his opinion. The record also shows that the testimony helped explain his encounter with the victim and the circumstances of the initial report. The trial court, therefore, did not apply an incorrect legal standard or reach an illogical result in overruling the Defendant's objection.

### 4. The Effect of Any Error

Even if the trial court erred in allowing Officer Vega to state that the victim had "just experienced something very traumatic," the Defendant would not be entitled to relief. An error does not affect the judgment unless, considering the whole record, the error "more probably than not affected the judgment or would result in prejudice to the judicial process." *State v. Rodriguez*, 254 S.W.3d 361, 374 (Tenn. 2008); Tenn. R. App. P. 36(a); *see also McCloud*, 310 S.W.3d at 865 (holding that an error in admitting lay opinion evidence is subject to harmless error analysis). Ultimately, "[t]he key question is whether the error likely had an injurious effect on the jury's decision-making process. If the answer is yes, the error cannot be harmless." *State v. Brown*, No. M2017-00904-CCA-R3-CD, 2019 WL 1514551, at *30 (Tenn. Crim. App. Apr. 8, 2019) (citing *State v. Dotson*, 254 S.W.3d 378, 389 (Tenn. 2008)), *perm. app. denied* (Tenn. Aug. 15, 2019).

Several considerations show that any error in admitting the officer's testimony did not affect the verdict. First, the challenged "traumatic" characterization was brief and did not recur during Officer Vega's testimony. After the trial court overruled the Defendant's objection, Officer Vega testified only that he believed the victim was in a state of shock. Neither the State nor any later witness repeated the "traumatic" characterization as substantive proof of the offense.

Second, the jury did not have to rely solely on Officer Vega's characterization of the victim's demeanor. The State introduced the body-camera recording of Officer Vega's interaction with the victim, and the jury could assess the victim's demeanor for itself. The State also directed the jury to the victim's contemporaneous statements and conduct on that recording. For example, the State argued that the recording showed the victim wringing her hands and sometimes responding only by nodding. This evidence gave the jury an independent basis to evaluate the victim's condition when she first reported the incident, thereby reducing any risk of prejudice from Officer Vega's characterization. *See McCloud*, 310 S.W.3d at 865; *State v. Cook*, No. W2012-00406-CCA-R3-CD, 2013 WL 9570493, at *9 (Tenn. Crim. App. Sept. 4, 2013), *perm. app. denied* (Tenn. Feb. 11, 2014).

Third, the Defendant did not leave Officer Vega's characterization unanswered. In his closing argument, defense counsel used the body-camera recording to challenge the officer's perception directly. Counsel reminded the jury that it had seen the video footage of Officer Vega's conversation with the victim. He then argued, "He claims that she was in shock. I submit to you that she was calm and was not in shock[.]" Counsel emphasized that the significance of the victim's demeanor was "a decision for [the jury] to make, not for Officer Vega to make, not for me to make, it's for [the jury] to make."

Defense counsel's argument substantially reduced any risk that Officer Vega's testimony displaced the jury's role. Rather than accepting Officer Vega's characterization as conclusive, the jury was expressly invited to view the recording, compare the officer's description against what it saw, and decide for itself whether the victim appeared shocked. The Defendant, therefore, used the same evidence that formed the basis of Officer Vega's opinion to argue the opposite inference. *See McCloud*, 310 S.W.3d at 865; *Cook*, 2013 WL 9570493, at *9.

Finally, the trial court instructed the jury that it was the sole judge of the facts and that it must consider the evidence under the law given by the court. The court also instructed the jury that the attorneys' statements were not evidence. We presume that jurors follow the trial court's instructions. *See State v. Young*, 196 S.W.3d 85, 111 (Tenn. 2006).

The court's instructions further reduced any risk that Officer Vega's characterization affected the jury's decision-making.

These four considerations confirm that any error was harmless. The challenged statement was brief and isolated, and the body-camera recording gave the jury an independent basis for evaluation. Defense counsel directly challenged the characterization in his closing argument, and the trial court instructed the jury that it was the sole judge of the facts. On this record, the Defendant has not shown that any error more probably than not affected the judgment.

## D.    CUMULATIVE ERROR

Finally, the Defendant contends that, even if the errors individually do not warrant a new trial, the cumulative effect of those errors mandates a new trial to preserve his right to a fair trial. We respectfully disagree.

The cumulative error doctrine applies when there have been "multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). More than one actual error must exist before the doctrine can apply. *Id.* at 77.

Because we have determined that the Defendant has failed to establish any error in the trial proceedings, no errors exist to aggregate. The cumulative error doctrine is therefore not applicable, and the Defendant is not entitled to relief. *See, e.g.*, *State v. DiDomenico*, No. M2024-01368-CCA-R3-CD, 2025 WL 2795066, at *12 (Tenn. Crim. App. Oct. 1, 2025), *perm. app. denied* (Tenn. Feb. 25, 2026).

## CONCLUSION

In summary, we hold that the evidence is legally sufficient to support the Defendant's conviction for aggravated sexual battery. We also conclude that the trial court acted within its discretion in denying the Defendant's motion in limine regarding evidence related to the victim's history and in admitting lay opinion testimony about the victim's demeanor at the time of the offense. Finally, because the Defendant has failed to establish

any trial error, the cumulative error doctrine is inapplicable.  Accordingly, we respectfully affirm the judgments of the trial court.



s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE